**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **MICHAEL J. DRESSEL,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 18-cv-1548-MJR** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**ORDER ON PETITION TO VACATE, SET ASIDE**
**OR CORRECT SENTENCE UNDER 28 U.S.C. 2255**

**REAGAN, Chief Judge:**

## A.     Introduction

In Case Number 16-cr-30083-01-MJR ("the underlying case"), Michael J. Dressel pled guilty to attempting to possess with intent to distribute methamphetamine. The terms of the plea were delineated in a twelve-page plea agreement and a three-page stipulation of facts (Docs. 59, 61), both of which were signed by Dressel and his lawyer— retained counsel of Dressel's choosing, Patrick Kilgore of St. Louis, Missouri.

In the plea agreement, Dressel waived the right to directly appeal or collaterally attack his sentence: "Defendant knowingly and voluntarily waives the right to contest any aspect of the conviction and sentence" (Doc. 59, p. 9; emphasis in original). The agreement contained several exceptions to the waiver, including the standard exception for a Sentencing Guideline amendment that is made retroactive and — relevant here — "claims of ineffective assistance of counsel" (*id.*).

In the plea documents, the parties agreed the applicable statute provided a twenty-year maximum term of incarceration, and the advisory United States Sentencing Guidelines called for 151 to 188 months in prison. Ultimately, the undersigned imposed a *below*-guideline sentence of 120 months, followed by three years of supervised release. Judgment was entered September 6, 2017. No direct appeal was taken.

On August 6, 2018, Dressel filed a motion for appointment of counsel to assist him in "filing his 2255 for ineffective assistance of counsel" (Doc. 89). The undersigned entered an Order noting that there was no open case in which to appoint counsel but, because Dressel mentioned ineffective assistance, sent Dressel the form and instructions for a petition under 28 U.S.C. 2255, in case that was what he was endeavoring to file.

On August 27, 2018, Dressel filed a petition to vacate, set aside, or correct his sentence under 28 U.S.C. 2255, which opened the above-captioned civil case.[1] On threshold review, the undersigned declined to summarily dismiss the petition and organized the arguments into three claims, as follows:

1. Dressel had ineffective assistance of counsel *between his guilty plea and sentencing* hearings, in that his attorney failed to appear for Dressel's presentence investigation interview conducted by the U.S. Probation Office at the Marion County jail.

2. Dressel had ineffective assistance of counsel *during sentencing*, in that his lawyer failed to object to facts related to Dressel's relevant conduct which Dressel wanted to protest (specifically, the quantity of drugs Dressel was being sentenced on, which he insists was not correct, *see* Doc. 1, p. 8).

---

[1] In the remainder of this Order, "Doc." references are to documents in the civil case (18-cv-1548), unless otherwise noted.

3.        Dressel had ineffective assistance *in the guilty plea phase*, in that he was coerced into signing the plea agreement by his lawyer (a) issuing the ultimatum, "don't sign this and you're going to get 20 years" (Doc. 1, p. 5); and (b) "lying" to Dressel – and giving him "false hope" – that if he signed the plea agreement, he would "not do more than five years" (Doc. 1, p. 10).

The petition ripened with the filing of Dressel's December 13, 2018 reply brief (Doc. 9).

Three preliminary issues bear mention.

**B.**    <u>**Preliminary Issues**</u>

First, the Court finds that the petition was timely filed under 28 U.S.C. 2255(f). ***See*** **28 U.S.C. 2255(f);** *Narvaez v. United States*, **674 F.3d 621, 625 (7th Cir. 2011) (a one-year limitation period governs petitions to vacate, set aside, or correct a sentence);** *Clay v. United States*, **537 U.S. 522, 524 (2003) (the one-year period is triggered by the latest of four events and typically runs from "the date on which the judgment of conviction becomes final").**

Second, the Court finds that the petition, construed to present three claims for ineffective assistance of counsel, is not barred by the waiver contained in Dressel's plea agreement. Exempted from the scope of that waiver were collateral challenges presenting "claims of ineffective assistance of counsel" (Doc. 6-2, p. 9). The United States argues that, viewed as substantive claims (not ineffective assistance claims), Dressel's arguments are both blocked by the waiver provision and doomed by his failure to show cause and prejudice for not raising the issues on direct appeal. This would be true if the Court treated the claims substantively, but it does not.

Next, although the undersigned often sets hearings on ineffective assistance of counsel claims, having reviewed the briefs and exhibits here, the Court finds an evidentiary hearing not warranted under Rule 8(a) of the Rules Governing Section 2255 Proceedings.  Not every petition warrants a hearing.  **Boulb v. United States, 818 F.3d 334, 339 (7th Cir. 2016).**  An evidentiary hearing is not required if the record before the court conclusively shows that the petitioner is entitled to no relief.  **Mitchell v. United States, 846 F.3d 937, 941 (7th Cir. 2017),** *citing* **28 U.S.C. 2255(b), and** *Martin v. United States,* **789 F.3d 703, 706 (7th Cir. 2015).**  **See also Kafo v. United States, 467 F.3d 1063, 1067 (7th Cir. 2006) (to justify a hearing, petition must be accompanied by a detailed affidavit which indicates that the petitioner has actual proof of the allegations going beyond mere unsupported assertions).**  As explained below, the record before this Court conclusively reveals that Dressel is not entitled to relief, so no hearing is required.

## C.  <u>Analysis</u>

Analysis starts with the proposition that relief under § 2255 is limited.  It is "available only in extraordinary situations," requiring an error of constitutional or jurisdictional magnitude or a fundamental defect that resulted in a complete miscarriage of justice.  **Blake v. United States, 723 F.3d 870, 879 (7th Cir. 2013), cert. denied, 573 U.S. 921 (2014).  Accord United States v. Coleman, 763 F.3d 706, 708 (7th Cir. 2014).**

Dressel maintains that his right to effective counsel was violated at the plea and sentencing phases of the proceedings in this Court.  The Sixth Amendment to the United States Constitution provides that in all criminal prosecutions, "the accused shall enjoy the right … to have the Assistance of Counsel for his defence."  **U.S. CONST. amend. VI.**

The right to assistance of counsel encompasses the right to effective assistance of counsel. *Blake,* **723 F.3d at 879,** *citing Watson v. Anglin,* **560 F.3d 687, 690 (7th Cir. 2009).** *Accord Osagiede v. United States,* **543 F.3d 399, 406 (7th Cir. 2008) ("Ineffective assistance of counsel claims are, of course, brought to vindicate the Sixth Amendment right to counsel, since the right to counsel is the right to** *effective* **counsel.")**

More specifically stated, the Sixth Amendment guarantees a defendant the effective assistance of counsel at the "critical stages of a criminal proceeding." *Lee v. United States,* **-- U.S. --, 137 S. Ct. 1958, 1964 (2017).** This guarantee extends to the plea bargaining process as well as sentencing. *Id.; see also Delatorre v. United States,* **847 F.3d 837, 845 (7th Cir. 2017),** *citing Lafler v. Cooper,* **566 U.S. 156, 162 (2012), and** *Missouri v. Frye,* **566 U.S. 134, 144 (2012).** Without question, the negotiation of a plea bargain is a critical point for a defendant. *Delatorre,* **847 F.3d at 845.** So, for instance, if an attorney fails to make a meaningful attempt to inform his client of a written plea offer, or advises his client to *reject* a highly favorable offer on the basis that the client could not be convicted at trial, the attorney performs deficiently under the Sixth Amendment. *Id.*

To prevail on an ineffective assistance of counsel claim, a petitioner must satisfy "the familiar two-part test" articulated in *Strickland v. Washington,* **466 U.S. 668 (1984),** demonstrating (1) "that counsel's representation fell below an objective standard of reasonableness," and (2) that petitioner was prejudiced as a result. *Lee,* **137 S. Ct. at 1964.**

As to the first (deficient performance) prong of *Strickland,* the petitioner must identify the specific acts of counsel he believes were ineffective *and* overcome a strong presumption that counsel's conduct fell within the wide range of professional assistance.

*Swanson v. United States,* **692 F.3d 708, 714 (7th Cir. 2012);** *Wyatt v. United States,* **574 F.3d 455, 458 (7th Cir. 2009),** *cert. denied,* **559 U.S. 1023 (2010).** *See also Brown v. Brown,* **847 F.3d 502, 513 (7th Cir. 2017) (Judicial review of counsel's performance is "highly deferential" and must be undertaken with every effort "to eliminate the distorting effects of hindsight").**

As to <u>plea bargains</u>, "a reasonably competent lawyer must attempt to learn all of the relevant facts of the case, make an estimate of the likely sentence, and communicate the results of that analysis to the client before the allowing the client to plead guilty." *Brock-Miller v. United States,* **887 F.3d 298, 308 (7th Cir. 2018),** *citing Spiller v. United States,* **855 F.3d 751, 755 (7th Cir. 2017).** To demonstrate deficient performance in the guilty plea context, the petitioner must show that his lawyer's advice regarding the plea was objectively unreasonable. *Id., citing Moore v. Bryant,* **348 F.3d 238, 241 (7th Cir. 2003).**

At the <u>sentencing</u> phase, an example of constitutionally deficient performance would be an attorney's failure to object to an error in the court's guideline calculation that results in a longer sentence for the defendant — like improper classification of a defendant as a career offender. *See, e.g., Ramirez v. United States,* **799 F.3d 845, 855 (7th Cir. 2015);** *United States v. Jones,* **635 F.3d 909, 916 (7th Cir. 2011).**

As to the second (prejudice) prong of *Strickland,* the petitioner must show a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Tucker v. United States,* **889 F.3d 881, 884 (7th Cir. 2018),** *quoting Strickland,* **466 U.S. at 694.** *Accord United States v. Parker,* **609 F.3d 891, 894 (7th Cir. 2010).**

In the guilty plea situation, this generally means the defendant must show a reasonable probability that, but for his lawyer's errors, the defendant "would not have pleaded and would have insisted on going to trial." *Gaylord v. United States,* **829 F.3d 500, 506 (7th Cir. 2016),** *quoting United States v. Cieslowski,* **410 F.3d 353, 359 (7th Cir. 2005).** That is, the "outcome of the plea process would have been different with competent advice." *Id.*

Of course, counsel's alleged errors fall into different categories. Sometimes it is alleged that a lawyer's poor performance resulted in a judicial proceeding of disputed reliability; other times, that poor performance caused the defendant to forfeit a proceeding entirely. When a petitioner alleges that his lawyer's poor performance "led him to accept a guilty plea rather than go to trial, we do not ask whether, had he gone to trial, the result of that trial 'would have been different' than the result of the plea bargain." *Lee,* **137 S. Ct. at 1965.** Rather, we consider whether the petitioner was "prejudiced by the denial of the entire judicial proceeding to which he had a right." *Id., citing Roe v. Flores-Ortega,* **528 U.S. 470, 483 (2000).**

> As we held in *Hill v. Lockhart,* when a defendant claims that his counsel's deficient performance deprived him of a trial by causing him to accept a plea, the defendant can show prejudice by demonstrating a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." 474 U.S., at 59….

*Lee,* **137 S. Ct. at 1965.[2]** With these standards in mind, we turn to Dressel's three ineffective assistance of counsel claims.

---

[2] This test governs if the alleged attorney error is one that affects the defendant's understanding of the consequences of pleading guilty (like erroneous

Dressel first asserts that he received ineffective assistance of counsel when his retained lawyer, Patrick Kilgore, failed to appear at the Marion County Jail for the presentence investigation interview conducted by "the P.S.I. writer" (a United States Probation Officer). In the petition, this argument was completely undeveloped. Dressel just complained of the interview: "At minimum this is a violation of contact with persons represented by counsel" (Doc. 1, p. 6). Undeveloped arguments are insufficient under *Strickland. See, e.g., Mendoza v. United States,* **755 F.3d 821, 830-31 (7th Cir. 2014)** ("**With nothing other than conclusory allegations, Mendoza cannot establish deficient performance or, for that matter, prejudice.**").

But Dressel fleshed out this argument in his reply brief (Doc. 9, p. 3, pp. 5-6): "criminal information was obtained by the Government through a breach of the attorney-client privilege, a privilege Dressel never waived." Dressel contends "the prosecution unilaterally violated both the American Bar Association" rules and the Illinois Rules of Professional Conduct by permitting contact with him outside the presence of his attorney, and that the government used information Dressel communicated in the interview (about drug quantity, Dressel's "travel arrangements," and his "electronic communications") to create the presentence investigation report (PSR) used at sentencing (*id.*, pp. 2-5, p. 8).[3]

---

advice as to eligibility for deportation). A different showing is required if the defendant's decision about going to trial "turns on his prospects of success and those are affected by the attorney's error – for instance, where a defendant alleges that his lawyer should have but did not seek to suppress an improperly obtained confession" or failed to investigate potentially exculpatory evidence. *Lee,* **137 S. Ct. at 1965.** In that situation, the defendant/petitioner must show that he would have been better off going to trial than pleading guilty. *Id.*

Patrick Kilgore submitted an affidavit supplying the details of what occurred as to his not being present at the post-plea, pre-sentencing interview with a probation officer (Doc. 6-4). Kilgore was not able to attend the interview due to an "unavoidable scheduling conflict." But prior to the date of the interview — *on at least two occasions* — Kilgore discussed with Dressel the purpose of the interview, the process that would occur, and what to expect in the interview.

The undersigned (during the change of plea hearing, after accepting Dressel's guilty plea) had explained what would happen during the interview, too (*see* Transcript at Doc. 92 in underlying case, pp. 19-20):

> Now the next thing to happen, Mr. Dressel, is Probation will meet with you to prepare a detailed Presentence Investigation Report. It is going to tell me everything I need to know about you from when you were born until the date of the interview. I want to know your social history, medical history, employment history. I will know about this offense, the sentencing guidelines, everything I need to know about you…. Make sure you are completely honest with Probation.

At the time of the change of plea, Kilgore planned to attend the interview and said so (*id.*, p. 20). When he learned he would not be able to attend the interview, he contacted the probation officer assigned to the case and set ground rules for the interview. Kilgore advised Dressel that the interviewer would **not ask any questions about the offense conduct in this case or Dressel's criminal history.** Kilgore personally spoke with the probation officer who agreed to these conditions, which were the only conditions on

---

[3]     Dressel never identified any information regarding *travel arrangements* or *electronic communications* allegedly divulged in the interview. He focused his argument only on the drug quantity which found its way into the PSR, as discussed more fully below (the **same quantity** Dressel had admitted in his plea).

which Kilgore would permit the interview to go forward in his absence. Kilgore attests this is how the interview proceeded, and in a meeting with Dressel after the interview, Dressel "indicated that the interview went very well and that there were no problems" with the interview (Doc. 6-4, p. 2).

Dressel has not shown constitutionally deficient performance by his lawyer as to the interview. He charges the prosecution with violating legal and ethical canons. That is not sub-par performance by *defense counsel*. He expresses outrage that his lawyer was not with him during the interview, but Dressel knew this at the time of the interview, never tried to stop the interview, never conveyed any concerns to his counsel before or after the interview (to the contrary, he reported that the interview "went very well"), and never advised the Court of his unease regarding counsel's no-show for the interview.

Moreover, Dressel's arguments rest on the mistaken assumption that the Sixth Amendment right to counsel applies to a post-conviction presentence interview by a probation officer. He cites no authority to support this proposition, and a review of federal caselaw discloses cases reaching the conclusion opposite that urged by Dressel. *See, e.g., United States v. King,* **559 F.3d 810, 813 (8th Cir.) (defendants do "not have a Sixth Amendment right to counsel during a PSR interview, as it is not a 'critical' stage of the prosecution…."),** *cert. denied,* **558 U.S. 863 (2009);** *United States v. Tyler,* **281 F.3d 84, 96 (3rd Cir. 2002) (noting that "no court has found the Sixth Amendment right to counsel applies to routine presentence interviews" and collecting cases on same);** *United States v. Smith,* **929 F.2d 1453, 1458 n.2 (10th Cir. 1991) (routine post-conviction presentence interview is not a "critical stage" of the proceedings at which a defendant**

has a Sixth Amendment right to representation of counsel); *United States v. Woods,* 907 F.2d 1540, 1543 (5th Cir. 1990) (presentence interview in non-capital case is not a critical stage of proceedings requiring counsel). *See also Brown v. Butler,* 811 F.2d 938, 941 (5th Cir. 1987) (probation officer is an "arm of the court charged with assisting the court in arriving at a fair sentence," and post-conviction interview with probation officer is not a critical stage of the proceeding in which counsel is required).

In *United States v. Washington,* 619 F.3d 1256, 1261 (10th Cir. 2010), the Tenth Circuit re-examined the purpose behind the constitutional guarantee of assistance of counsel and held that although a defendant does not have the right to the presence of counsel at the presentence interview, he does have a right to counsel's advice regarding the impact of relevant conduct on the sentencing process, as well as the nature and purpose of the presentence interview. Kilgore's affidavit indicates that he provided advice as to these key items to Dressel in advance of the interview, and he made sure that the probation officer did not question Dressel about offense conduct or criminal history. Dressel has not refuted that with any sworn declaration, affidavit, or similar evidence.

Kilgore at least twice advised Dressel about the interview process, what would be asked of him, what topics would be covered, and how the information would be used at sentencing. Kilgore took steps to safeguard the process by limiting what the probation officer could ask in his absence. Dressel never mentioned any problem with the interview to his lawyer, and he never told the Court that he had an issue with the PSR interview.

Dressel has not shown any constitutionally deficient performance by defense counsel on this front.[4]

Assuming, *arguendo,* that Dressel had shown deficient performance by Kilgore regarding the PSR interview, he has not demonstrated prejudice resulting therefrom. Dressel's suggestion that the 1.7-kilogram quantity was somehow improperly extracted from him *during the PSR interview* completely overlooks the fact that **before** he ever sat down for the interview with probation, he signed a written plea agreement that contained that precise quantity, and he admitted in open Court that it was accurate and correct. Dressel's first § 2255 claim fails to pass **Strickland** muster.

Dressel's second claim is that he had ineffective assistance of counsel at sentencing, because his lawyer failed to object to facts related to relevant conduct which Dressel wanted to challenge. Specifically, Dressel maintains that during the sentencing hearing, he asked his lawyer to object to the amount of drugs Dressel was being sentenced on, an amount he insists was incorrect, and his lawyer refused. Here again, we begin by asking whether Dressel has satisfied the deficient performance prong of **Strickland**. He has not.

Dressel must show that Kilgore's representation fell below an objective standard of reasonableness measured against prevailing professional norms. **Gaylord,** **829 F.3d at 506.** Acknowledging the broad universe of competent legal strategies and stressing the

---

[4]     Dressel's reply brief contains a fleeting complaint that "Mr. Kilgore had not read the presentence report despite his claims to the contrary" (Doc. 9, p. 6). The undersigned's recollection of the sentencing hearing, confirmed by review of the transcript, discredits that assertion. In fact, Dressel himself stated to the Court at sentencing that he had reviewed in detail the *entire* 33-page PSR *with his attorney* in advance of the sentencing (*see* Doc. 94 in underlying case, p. 2).

need to avoid the pitfall of review in hindsight, the Seventh Circuit has held that scrutiny of an attorney's performance "is highly deferential and reflects a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Groves v. United States,* **755 F.3d 588, 591 (7th Cir.),** *cert. denied,* **-- U.S. --, 135 S. Ct. 501 (2014),** *quoting Yu Tian Li v. United States,* **648 F.3d 524, 527-28 (7th Cir. 2011).** A lawyer's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Vinyard v. United States,* **804 F.3d 1218, 1225 (7th Cir. 2015),** *citing Strickland,* **466 U.S. at 690.** *See also Harris v. United States,* **366 F.3d 593, 596 (7th Cir. 2004) (attorney's decision not to advocate for guideline "safety valve" at sentencing was strategic decision based on professional judgment).**

In his sworn affidavit, Kilgore attests that he does not recall Dressel asking him to make an objection based on drug quantity. And Kilgore knows of no basis on which he could have done so.

Furthermore, Dressel's claim that he wanted to object at sentencing to an "incorrect" drug quantity he was being sentenced on is squarely contradicted by the plea agreement he signed and his statements to the Court during the change of plea hearing and sentencing hearing. In the plea agreement Dressel executed four months before sentencing (and attested to having reviewed carefully with counsel before signing), he *admitted* that his relevant conduct was 1709.2 grams of methamphetamine – the same amount referenced in the PSR and used to sentence him. The plea agreement (Doc. 6-2, p. 4; emphasis added) described this drug quantity as follows:

Attempted Possession with intent to distribute at least 1.5 kilo but less than 4.5 kilos of methamphetamine (ice). Relevant conduct includes the quantity of methamphetamine (ice) contained in the package charged in Count I of the Indictment (854.6 grams) and approximately the same quantity contained in a similar package that Dressel [sic] sent to co-defendant Stewart on a prior occasion, for a total of **1709.2 grams** of methamphetamine (ice).

During the plea colloquy, under oath, Dressel acknowledged that he understood everything in the plea agreement and that he had gone over it in detail with counsel before the change of plea hearing. When confronted with the estimated sentencing range based on the circumstances of the case (151-188 months of incarceration, under the advisory guidelines), Dressel momentarily expressed surprise, so the undersigned adjourned the proceeding for a 15-minute break to be sure Dressel fully grasped the impact of what was being said and could discuss it with his lawyer and advise the Court if he completely understood what was happening and wanted to go forward with the guilty plea (*see* Plea Transcript, Doc. 92 in underlying case, pp. 8-11). Dressel did so. During the entire change of plea hearing, Dressel never expressed any disagreement with the relevant conduct he admitted to in the written plea documents.

At sentencing, *before* accepting the PSR and adopting the factual findings contained in it, the undersigned directly asked Dressel if he had reviewed the PSR in detail with his lawyer (Dressel said yes) and whether he found "everything in the report **correct and accurate**?" (Dressel replied "Yes") (*see* Doc. 94 in underlying case, p. 2, emph. added). During the sentencing, the undersigned Judge plainly referenced the quantity of drugs when discussing Dressel's relevant conduct (*id.*, p. 11, "packages that contained 1.7 kilograms of ice").

Dressel never voiced disagreement with the drug quantity or relevant conduct assessment, despite being given opportunities to do so — *see id.,* p. 5, where the undersigned asked: "Mr. Dressel, your turn to talk. Is there anything you want me to know before I pronounce sentence?" Dressel made a quite lengthy statement (*id.,* pp. 5-9) but never asked a question about or challenged the drug quantity or relevant conduct referenced in the plea agreement and PSR.

Kilgore diligently discharged his duties of representation in connection with sentencing. He filed a sentencing memorandum with letters of support for Dressel — including his sister (Bridget), his high school vice principal (Barry), and his high school counselor (Sherry). Kilgore spoke eloquently at the sentencing hearing on Dressel's behalf. He made a recommendation for Dressel's BOP placement (close to family members) and a long-term substance abuse program ("RDAP") for him during custody.

Dressel has not shown constitutionally deficient performance by his counsel at sentencing. Nor has Dressel shown prejudice, i.e., a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." ***Tucker*, 889 F.3d at 884.** Indeed, the Court sentenced Dressel to a term of incarceration *well below* the advisory guideline range – giving him only 120 months when the plea agreement he signed contemplated a 151-188-month range.

The Court is left to speculate on how the result of the September 2017 sentencing would have been different had Mr. Kilgore objected then to the 1709.2 grams of methamphetamine Dressel pled guilty to back in May 2017. Dressel has not demonstrated prejudice, and the record is devoid of facts indicating prejudice. He falls

far short of satisfying prong two of the ***Strickland*** test.  ***See, e.g., Hicks v. United States,*** **886 F.3d 648, 651 (7ᵗʰ Cir. 2018) ("Unlike demonstrating an error in the guideline calculation, speculating about what might have been is not sufficient to show a reasonable probability of a different outcome."); *Byrd v. Workman*, 645 F.3d 1159, 1168 (10ᵗʰ Cir. 2011) (mere speculation is insufficient to show prejudice under *Strickland*)**. Given the circumstances of this case and the fact the undersigned imposed a sentence 31 months *below the bottom* of the advisory range, "there is barely a theoretical possibility, let alone a 'reasonable' probability, that the judge would have imposed a sentence shorter" than what Dressel received.  ***See Hicks*, 886 F.3d at 652.**  Dressel has not and cannot on this record show prejudice.

Dressel fares no better on his final argument for § 2255 relief.  He asserts that Kilgore gave ineffective assistance in the guilty plea phase by coercing Dressel into signing the plea agreement with two tactics:  (a) Kilgore issued the ultimatum, "don't sign this and you're going to get 20 years" (Doc. 1, p. 5); and (b) Kilgore lied to Dressel and filled him with "false hope" by telling him that if he signed the plea agreement, he would "not do more than five years" (Doc. 1, p. 10).   These assertions are flatly refuted by Kilgore's sworn affidavit.  Kilgore broadly denies ever making any ultimatum about pleading guilty to Dressel (Doc. 6-4, p. 3).

The affidavit further attests that when Kilgore and Dressel reviewed the plea agreement together, Kilgore explained the concept of relevant conduct (the 1709.2 grams of narcotics involved), explained that the maximum penalty for the offense was twenty years (statutorily), explained that the "Government was offering to make a low-end

Guidelines recommendation of 151 months" (of the 151-188 guideline range), and *recommended* that Dressel accept the plea deal, because "the facts were overwhelmingly against [Dressel], but … by pleading, he could potentially get a three-level reduction for Acceptance of Responsibility under the Guidelines, which he would lose if he went to trial" (Doc. 6-4, p. 3). This is an accurate and reasonable assessment (and sound advice).

Dressel's contention that he was forced, tricked, or pressured into a plea deal is also utterly belied by his own sworn testimony at the change of plea hearing, when he was directly asked: "Has anyone used any threats, coercion, force, duress, or made any promises, assurances, or guarantees of any kind to get you to plead guilty other than the promises in your plea agreement and the addendum to it?" and Dressel responded, "No" (Doc. 92 in underlying case, p. 6). He was asked a second time by the Court: "Has anyone used pressure, force, duress, or made promises, assurances or guarantees of any kind to get you to sign either of the documents?" Dressel responded, "No" (*id.*, p. 7). Additionally, Dressel stated under oath that he was pleading guilty because he was, "in fact, guilty as alleged in the Indictment and the Government can prove everything in it … beyond a reasonable doubt" (*id.,* p. 5*,* p. 17).

Dressel will be held to his sworn statements before this Court. As the United States Supreme Court reminded recently, a defendant "relinquishes any claim that would contradict the admissions necessarily made upon entry of a voluntary plea of guilty." ***Class v. United States,* -- U.S. --, 138 S. Ct. 798, 805 (2018),** *quoting United States v. Broce,* **488 U.S. 563, 573–74 (1989).**

Dressel has not demonstrated deficient performance by his counsel during the guilty plea phase, and he has not demonstrated any prejudice resulting from waiving the right to proceed to trial. In this context, a defendant can show prejudice by demonstrating a reasonable probability that —but for his lawyer's sub-par performance — he would *not* have pleaded guilty and would have *insisted* on going to trial. ***Lee*, 137 S. Ct. at 1965.** Dressel has not submitted any evidence that he wanted or demanded to go trial instead of pleading guilty.

The Supreme Court has admonished: "Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preference." ***Lee*, 137 S. Ct. at 1967.** Here, Dressel has offered no shred of contemporaneous evidence that he preferred to gamble on a trial rather than proceed with a guilty plea in which the United States promised to seek the low end of the advisory guideline range.

The record before this Court contains abundant evidence that Dressel's guilty plea was knowing, voluntary, willingly entered, and not the product of duress or coercion. The record further reveals that Dressel pled guilty because he knew he was, in fact, guilty as charged, and he appreciated that the prosecution could shoulder its burden of proving that to a jury. The record also discloses that Dressel believed his attorney was doing a good job. The undersigned asked if Dressel was "fully satisfied with the counsel, representation and advice that Mr. Kilgore has given you?" Dressel, without hesitation, responded "Yes" (Doc. 92 in underlying action, p. 5). The Court further inquired of

Dressel regarding the assistance of counsel he had received: "Is there anything he has refused to do or has been unwilling or unable to do with respect to defending you," and Dressel said "No" (*id.*). Dressel has failed to demonstrate ineffective assistance of counsel in the form of being pressured or coerced into a guilty plea.

## D.   <u>Conclusion</u>

Last year, the Supreme Court reiterated that the right to *effective* assistance of counsel "is a bedrock principle in our justice system," and *ineffective* assistance "is deficient performance by counsel resulting in prejudice, with performance being measured against an objective standard of reasonableness." ***Ayestas v. Davis,* -- U.S. --, 138 S. Ct. 1080, 1096 (2018),** *quoting **Martinez v. Ryan,* 566 U.S. 1, 12 (2012), and *Rompilla v. Beard,* 545 U.S. 374, 380 (2005).** *Strickland* and its progeny establish that "when a court is presented with an ineffective-assistance-of-counsel claim, it should look to the full record presented by the defendant to determine whether the defendant satisfied his burden to prove deficient performance." ***Reeves v. Alabama,* -- U.S. --, 138 S. Ct. 22, 26 (2017).**

To prevail on the deficient performance prong, a defendant must overcome a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. ***Perrone v. United States,* 889 F.3d 898, 908 (7th Cir. 2018),** *citing **Wyatt,* 574 F.3d at 458.** To prevail on the prejudice prong, a defendant must show that but for his lawyer's errors, there is a "reasonable probability that the result would have been different." ***Perrone,* 889 F.3d at 908,** *quoting **United States v. Graf,* 827 F.3d 581, 584 (7th Cir. 2016),** *cert. denied,* -- U.S. --, 137 S. Ct. 1329 (2017).** In the guilty plea context, this

means the defendant must show a reasonable probability that but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. As with the deficient performance analysis, "there is a presumption that the petitioner has not suffered prejudice." *Id.*

In the case at bar, for the reasons explained above, Dressel has proven neither deficient performance nor prejudice. His ineffective assistance of counsel claims are meritless. Because Dressel's arguments that his lawyer's performance prejudiced him are purely speculative, and the record conclusively shows that Dressel is not entitled to relief, no evidentiary hearing is warranted. *See Hicks*, **886 F.3d at 649-50.**

The petition is hereby **DISMISSED**. The Clerk of Court shall enter judgment in favor of Respondent United States of America and against Petitioner Dressel.

E.      <u>Certificate of Appealability</u>

Rule 11(a) of the Rules Governing Section 2255 Proceedings requires a district court entering a final order adverse to a petitioner to issue or deny a certificate of appealability. 28 U.S.C. 2253(c)(2) states that a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." This standard requires the petitioner to demonstrate that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the "issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, **537 U.S. 322, 336 (2003)**, *quoting Slack v. McDaniel*, **529 U.S. 473, 484 (2000).** *See also United States v. Fleming*, **676 F.3d 621, 625 (7th Cir. 2012).**

For the reasons explained above, the Court finds Dressel has failed to demonstrate an error of constitutional magnitude or a fundamental defect that resulted in a complete miscarriage of justice.  Reasonable jurists would not find these conclusions debatable. Because Dressel failed to make a substantial showing of the denial of a constitutional right, the Court **DECLINES to issue** a certificate of appealability.

IT IS SO ORDERED.

DATED January 25, 2019.

s/*Michael J. Reagan*
Michael J. Reagan
United States District Judge